**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ELIABNER MERCEDES MALDONADO, *Plaintiff*, | ) | 3:25-CV-01892 (SVN) |
| v. | ) | |
| JAMIE ROSA, et al., *Defendants*. | ) | October 30, 2026 |

**INITIAL REVIEW ORDER**

Sarala V. Nagala, United States District Judge.

At all times relevant to this matter, *pro se* Plaintiff Eliabner Mercedes Maldonado was a special parolee.[1] Plaintiff filed this action under 42 U.S.C. § 1983, claiming violations of the Fourth Amendment, Eighth Amendment, and Fourteenth Amendment of the United States Constitution. In this suit, Plaintiff names seven defendants: Parole Officer Jamie Rosa, Parole Manager Belinda Rivera, Lieutenant Bishop, Director Rhianna Gingras, Correctional Officer James Collins, and Correctional Officer Thomas.

The Prison Litigation Reform Act, 28 U.S.C. § 1915A,[2] requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court concludes that Plaintiff's complaint must be dismissed in full. The Court will permit Plaintiff to file an amended complaint.

---

[1] Special parole is an additional period of supervision that begins after completion of an inmate's maximum term of imprisonment. Conn. Office of Legislative Research Rep. 2008-R-0175, *Special Parole*, https://www.cga.ct.gov/2008/rpt/2008-R-0175.htm (February 27, 2008) (last visited October 28, 2026); *Blango v. Ludovico*, No. 3:23-CV-00212 (SVN), 2024 WL 988164, at *2 (D. Conn. Mar. 7, 2024).

[2] 28 U.S.C. § 1915A requires Court review of certain complaints brought by a "prisoner," defined in relevant part as "any person incarcerated or detained in a facility . . . ." 28 U.S.C. § 1915A(c). At the time of filing the complaint, Plaintiff was housed at Osborn Correctional Institution as a "special parolee awaiting revocation hearing." ECF No. 1 at 2, 7.

## I. FACTUAL BACKGROUND

The Court accepts the allegations in Plaintiff's complaint, ECF No. 1, as true for purposes of this initial review order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was, at all times relevant to the complaint, serving a sentence of special parole. *See* Compl., ECF No. 1 ¶ 4. In November of 2023, Plaintiff was serving his special parole sentence under the supervision of Defendant Jamie Rosa in the Bridgeport District Office of Parole and Community Services. *Id.* ¶ 6. Plaintiff worked at Bridgeport Hospital and lived at a residence associated with "REACH," a service provider contracted by the Department of Corrections and managed by Parole and Community Services. *Id.* ¶¶ 6–7, 10.

On November 2, 2023, Defendant Rosa, accompanied by non-party Jessica Castillo, conducted an unannounced home visit and found drugs that Rosa attributed to Plaintiff. Gingras Ltr., *id.* at 20 (Exhibit E). Defendant Rosa asked local police officers to seize the drugs as physical evidence, *id.* ¶ 8, and police charged Plaintiff with possession of a controlled substance, *id.* ¶ 7.[3] Although the timing is unclear from the complaint, it appears that, shortly after the arrest, Plaintiff was admitted to Bridgeport Hospital based on his emotional and psychological distress. *Id.* ¶ 10. At the hospital, local police originally released him with a promise to reappear. *Id.* ¶ 11. But Officer Rosa "interrupted treatment and denied the adequate medical care the plaintiff was scheduled to take." *Id.*

Defendant Rosa completed a Remand to Actual Custody Order. *Id.* ¶¶ 2–3. Plaintiff alleges that Rosa forged Defendant Belinda Rivera's signature on the document and filed the

[3] According to the State of Connecticut Judicial Branch website, of which the Court may take judicial notice. *See Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) (State "prosecution of [Plaintiff] is a matter of public record, of which we take judicial notice."). Plaintiff was found guilty of possession of a controlled substance on November 25, 2024, based on the arrest on November 2, 2023, and was sentenced to 364 days in jail. *See Criminal/Motor Vehicle Conviction Case Detail*, Conn. Jud. Branch, https://perma.cc/ZA7T-7FQ7 (last visited October 28, 2026) (Docket No. F02B-CR23-04193-S).

document without following proper procedures. *Id.* ¶¶ 3, 12, 17. On November 21, 2023, the Board of Pardons and Paroles relied upon the Remand to Actual Custody Order to make a probable cause finding. *Id.* ¶ 19. However, Plaintiff alleges that the Remand to Actual Custody Order expired, and a warrant for reimprisonment was never delivered. *Id.* ¶¶ 21–22. Plaintiff "believes the board did not issue nor deliver the warrant" because he raised evidence discrepancies at the hearing. *Id.* ¶ 22. However, Plaintiff attaches a copy of the warrant of reimprisonment dated November 28th, 2023, as an exhibit to his complaint. *Id.* at 19 (Exhibit D).

Plaintiff sent letters to Parole Community Services voicing his concerns and, after receiving no response, *id.* ¶ 20, Plaintiff sent a letter to Defendant Gingras stating that Defendant Rosa forged Defendant Rivera's and Defendant Bishop's signatures on the Remand to Actual Custody Order. *Id.* ¶ 20; *id.* at 18 (Exhibit C, dated May 27, 2024). On June 10, 2024, Defendant Gingras responded confirming that Defendant Rivera authorized the remand, based upon the criminal charges. *Id.* at 20 (Exhibit E). On October 22, 2024, Defendant Gingras sent another letter acknowledging that Plaintiff's correspondence "ha[d] been received and reviewed," and confirming that Defendant Rivera's and Defendant Bishop's printed names on the remand form indicated their verbal authorization. *Id.* at 21 (Exhibit F). Plaintiff alleges that this policy (i.e., allowing Defendant Rosa to sign on behalf of other parole officers who gave verbal authorization) violates federal and state law. *Id.* ¶¶ 27–29.

Defendant Gingras indicated in an October 2024 letter that the grievance procedure would not be helpful as to this case. *Id.* ¶ 30. Plaintiff responded November 3, 2024, expressing dissatisfaction with Defendants' failure to follow protocols. *Id.* Plaintiff also met with State Trooper Rafala on November 8, 2024, at his prison to report the procedural issues with the Remand to Actual Custody Order, and a false police report by Officer Rosa. *Id.* ¶ 31.

On November 21, 2024, Plaintiff initiated a formal grievance with the Department of Correction. *Id.* ¶ 34; *id.* at 22 (Exhibit G). Eventually, Plaintiff filed a Grievance Level 2 Form, which he alleges was returned to him on August 8, 2025, without being processed. *Id.* ¶ 38; *id.* at 23 (Exhibit H). Plaintiff further alleges that Defendants Thomas, the prison's Administrative Remedies Coordinator ("ARC") and Collins, the prison's Freedom of Information ("FOI") liaison, informed plaintiff that he cannot use the DOC's procedure to grieve parole officers, which made Plaintiff feel disoriented and helpless. *Id.* ¶ 39. Plaintiff attempted to report the conduct of Defendants Thomas and Collins to Deputy Warden Moore and Warden Martin, but he never received "an appropriate answer." *Id.* ¶ 44. Plaintiff attempted to resubmit the grievance in September 2025, but it was rejected on October 1, 2025, to which Plaintiff submitted a response.[4] *Id*. Moreover, Plaintiff alleges that Defendant Gingras reviews Level 2 grievances, resulting in a conflict of interest with Plaintiff's efforts to seek redress through the DOC grievance procedure. *Id.* ¶¶ 40–41.

Plaintiff's allegations of the parole officers' misconduct was briefly discussed at the hearing on revocation of special parole, held on December 18, 2024. *Id.* ¶ 35.[5] Plaintiff alleges that he was illegally held in prison from November 25, 2024, to January 2, 2025. *Id.* ¶ 36. Plaintiff then transitioned to a halfway house until he was remanded to custody again on May 9, 2025. *Id.* ¶ 37.

In addition, Plaintiff alleges that on November 30, 2023, while in custody, he was diagnosed with a staph infection. *Id.* ¶ 18.

[4] Plaintiff cites to "Exhibit I," but no such exhibit is attached to the complaint.
[5] Although Plaintiff does not allege as much, the Court assumes that the Board of Pardons and Paroles found him guilty of violating his conditions of special parole, given that he was convicted of a new crime.

Plaintiff primarily seeks monetary damages as relief, and notes that, "[i]f appropriate and/or applicable the plaintiff would appreciate an injunction striking down 'the policy and/or internal protocol' (to be known) that allows D.O.C. personnel to violate Constitutional rights and statutes." *Id.* at 15.

The Court construes Plaintiff's complaint as raising claims for violation of the Fourth Amendment (malicious prosecution); violations of the Fourteenth and/or Eighth Amendment (deliberate indifference to Plaintiff's health and conditions of confinement); violation of the Fourteenth Amendment's Due Process Clause; and violation of the Fourteenth Amendment's Equal Protection Clause.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A, the Court must review civil complaints filed by prisoners and dismiss any portion of a complaint that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. §§ 1915A(b)(1)–(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

It is well-established that submissions of *pro se* litigant filings are entitled to "special solicitude," and "must be construed liberally and interpreted 'to raise the strongest arguments that

they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (*per curiam*) (citations omitted). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even where a plaintiff is proceeding *pro se*, the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III. DISCUSSION

The Court construes the complaint as arising under 42 U.S.C. § 1983 and alleging constitutional violations by all Defendants in their official and individual capacities.

### A. Eleventh Amendment Immunity

At the outset, each named Defendant is a state official immune from official-capacity suits for monetary damages. State officials may be sued in their official capacities "for injunctive or other prospective relief," but they "cannot be sued in their official capacities for retrospective relief under section 1983." *Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004); *see also Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985). Plaintiff's claims for monetary damages against Defendants in their official capacities, *see* ECF No. 1 at 15 (seeking damages), are barred by the Eleventh Amendment. U.S. Const. amend. XI; *Graham*, 473 U.S. at 169 ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.") (internal citations omitted). Thus, Plaintiff's official-capacity claims for monetary damages are dismissed as futile.

While a plaintiff can sue state officials in their official capacity for injunctive relief under the *Ex parte Young* exception to Eleventh Amendment immunity, he can do so only if he alleges

an ongoing violation of federal law. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002). As Plaintiff does not plausibly state a claim related to an ongoing violation of federal law, as discussed below, he cannot pursue his request for injunctive relief in the form of striking down policies he believes violate federal and state law. *See* ECF No. 1 at 15 (requesting such injunctive relief).

B. Section 1983 Claims Against State Officials in their Individual Capacities

State officials may be sued in their individual capacities under Section 1983. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("Insofar as [plaintiffs] seek damages against [defendant] personally, the Eleventh Amendment does not restrict their ability to sue in federal court."). As a general matter, a plaintiff seeking monetary damages from a defendant under 42 U.S.C. § 1983 must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991). This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

The Court assesses each of Plaintiff's constitutional claims against Defendants in turn.

*1. Fourth Amendment Unreasonable Search*

First, the Court notes that it does not construe Plaintiff's complaint as raising a claim of unreasonable search under the Fourth Amendment. The complaint contains no allegations suggesting that the search was unlawful, and instead focuses on Rosa's actions in signing the paperwork that resulted in Plaintiff's remand to custody. Additionally, Plaintiff is currently challenging the lawfulness of the search in his direct appeal of his underlying conviction for

possession of controlled substances. *See State v. Maldonado*, No. AC 48339 (Ct. App. Ct. filed January 10, 2025). The Connecticut Appellate Court heard argument on that case on September 2, 2026, and a decision remains pending. Accordingly, the Court does not construe the complaint as bringing a Fourth Amendment claim on the basis of the search of his apartment by Defendants Rosa and Castillo. If Plaintiff intended to bring such a claim, however, he may allege it in the amended complaint.

*2. Fourth Amendment Malicious Prosecution Claim*

Second, the Court concludes that Plaintiff fails to state a malicious prosecution claim challenging his conviction for possession of a controlled substance (and, to the extent applicable, any conviction he may have sustained for violation of his special parole).

Plaintiff alleges that he was illegally imprisoned between November 25, 2024, and January 2, 2025. ECF No. 1 ¶ 36. Based on the Judicial Branch website information stating that Plaintiff was convicted of possession of controlled substances on November 25, 2024, the Court interprets this claim as one for malicious prosecution, related to Plaintiff's conviction for that offense and any resulting conviction for violation of special parole. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (noting that a malicious prosecution claim "permits damages for confinement imposed pursuant to legal process," whereas a false arrest claim permits damages for the period of detention until the issuance of "process or arraignment, but not more").

But where a judgment in favor of the plaintiff would implicate the validity of his conviction or sentence, a cause of action under Section 1983 is not cognizable. *Id.* at 487. A plaintiff may surmount this hurdle only by showing that the underlying conviction has been reversed, declared invalid by a state tribunal, or called into question by issuance of a writ of *habeas corpus*. *See id.* In the absence of any allegations to such effect, Plaintiff fails to state a claim of malicious prosecution related to his November 25, 2024, conviction.

### 3. *Deliberate Indifference to Health & Conditions of Confinement Claim*

Third, Plaintiff fails to state a claim for deliberate indifference to his medical needs or his conditions of confinement.

Plaintiff alleges that, on November 30, 2023, while in custody, he was placed in unsanitary conditions and contracted a staph infection. ECF No. 1 ¶ 18, *id.* at 15 ("The plaintiff was placed under unsanitary living conditions, due to an unlawful remand."). The Court need not decide whether Plaintiff's deliberate indifference claim should be analyzed under the Fourteenth Amendment, which applies to pretrial detainees and would apply if Plaintiff is considered a pretrial detainee as to the new possession of controlled substances charge, or, instead, the Eighth Amendment, which applies to sentenced inmates and may apply to Plaintiff as a special parolee who was remanded to custody.[6] *See Darnell v. Pinero*, 849 F.3d 17, 29 (2d Cir. 2017) (explaining that a pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment). Under even the Fourteenth Amendment standard, which is more lenient, *see id.*, Plaintiff's claim fails because he does not allege any named Defendant's personal involvement in selecting the facility in which Plaintiff would be confined, their knowledge of alleged unsanitary conditions at such facility or, more generally, facts tending to show that the allegedly unsanitary conditions of the facility posed an objective risk of harm, such as contracting a staph infection. Accordingly, Plaintiff fails to state a deliberate indifference to health or conditions of confinement claim against any named Defendant.

---

[6] Plaintiff may also be considered a pretrial detainee as of November 30, 2023, insofar as the complaint suggests that the Board of Pardons and Parole hearing related to revocation of special parole did not occur until December 18, 2024. *See* Conn. Gen. Stat. § 54-127a (recognizing that special parole may be revoked or rescinded after a hearing).

*4. Fourteenth Amendment Due Process Claims*

Next, the complaint does not allege facts sufficient to support a Fourteenth Amendment procedural due process claim, to the extent Plaintiff brings one in connection with Plaintiff's remand to custody and ultimate revocation hearing.

Connecticut law permits a special parolee to be returned to actual custody without a written warrant, based on a request by the Department of Correction or the Board of Pardons and Paroles. Conn. Gen. Stat. § 54-127. No later than fourteen days after the remand to actual custody, a hearing examiner must conduct a preliminary hearing to determine whether there is probable cause to believe that the offender violated conditions of parole. Conn. Agencies Reg. § 54-124a(j)(1)-5(e) (2007). Additionally, no later than twenty-one business days after the remand to actual custody, or upon completion of any preliminary hearing, the Chairperson of the Board of Pardons and Paroles or their designee must evaluate whether continued detention remains appropriate and, if appropriate, shall deliver a warrant for reimprisonment as a substitute for the expiring Remand to Actual Custody Order within thirty days following the remand to actual custody. *Id.* § 54-124a(j)(1)-5(h). Later, at a revocation hearing, an employee of the Board of Pardons and Paroles may recommend revocation or rescission, and special parole may be revoked or rescinded if, after the hearing, at least two members of a panel of the Board approve the recommendation. Conn. Gen. Stat. § 54-127a.

The Due Process Clause of the Fourteenth Amendment applies to revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471 (1971). Thus, certain "minimum requirements of due process" must be met during revocation hearings. *Id.* at 489. These requirements include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds

good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 488–89.

Here, Plaintiff appears to allege that his "liberty interest was affected" because of his remand to custody (and ultimate parole revocation). ECF No. 1 ¶ 5. But, beyond acknowledging that a revocation hearing occurred and Defendants' alleged "wrong doings were mentioned and briefly discussed," Plaintiff does not describe the hearing's events. *Id.* ¶ 35. Thus, Plaintiff does not allege facts showing that the hearing procedures fell short of the minimum requirements of due process.[7]

Additionally, the thrust of Plaintiff's allegations focus on Defendant Rosa forging Defendant Rivera's signature on the Remand to Actual Custody Order. *See* ECF No. 1 ¶ 12. To the extent Plaintiff is contending that there was an insufficient evidentiary basis to issue the Remand to Actual Custody order, any such claim would "necessarily imply" the invalidity of Plaintiff's ultimate conviction for possession of controlled substances, as that possession offense was the basis for the remand. *Heck*, 512 U.S. at 487. Given that he was convicted of the controlled substance offense, he cannot pursue a claim for violation of his due process rights related to his remand without undermining the validity of that conviction. Indeed, the concrete harm Plaintiff alleges as a result of Rosa's alleged forgery is his re-incarceration, which rests on the new criminal charge (and, thus, the violation of special parole). Therefore, any due process claim related to Plaintiff's remand to actual custody is futile unless and until his controlled substance conviction

[7] Additionally, although Plaintiff believes that no warrant was issued after expiration of the Remand to Actual Custody Order, Exhibit D to his complaint contradicts this assertion. *Compare* ECF No. 1 ¶¶ 21–22 *with id.* at 19 (Warrant for Reimprisonment).

is overturned. *See Pennyman v. Desena*, No. 3:25-CV-00040 (SVN), 2026 WL 892276, at *11 (D. Conn. Mar. 31, 2026). And to the extent Plaintiff's due process claim is instead based upon what he perceives as a procedural irregularity in the issuance of the Remand to Actual Custody order—*i.e.*, Rosa signing for Rivera—the exhibits to his complaint make clear that Rivera gave verbal authorization to Rosa to issue the order, so there is no basis for a due process claim. *See* ECF No. 1 at 20, 21.

To the extent that the complaint attempts to allege a conditions of confinement due process claim, it falls short. The Due Process Clause of the Fourteenth Amendment generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 228 (1976). But there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted). In determining what constitutes an "atypical and significant hardship," courts consider "[b]oth the conditions [of confinement] and their duration . . . especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted). But Plaintiff's conclusory allegation that he experienced "atypical and significant hardship" does not suffice. ECF No. 1 ¶ 13. As explained above, Plaintiff's allegations pertaining to his conditions of confinement do not branch beyond his statement that he was placed

in "unsanitary living conditions." ECF No. 1 at 15. Thus, Plaintiff also fails to state a claim for unconstitutional conditions of confinement under the due process clause.

Finally, to the extent that the Complaint alleges that Defendants Thomas, Collins, and potentially Gingras violated Plaintiff's due process rights when they refused to respond to Plaintiff's grievances, neither state directives nor "state statutes . . . create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). "Thus, allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights." *Garcia v. Semple*, No. 3:18-CV-1226 (SRU), 2019 WL 5597771, at *15 (D. Conn. Oct. 30, 2019); *see also Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.").

Accordingly, the Court concludes that the Complaint fails to state a Fourth Amendment due process claim.

### 5. *Fourteenth Amendment Equal Protection/Class of One Claim*

Plaintiff also fails to allege sufficient facts in support of an equal protection or class of one claim.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To prevail on an equal protection claim, a plaintiff must allege that "(1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such

as race, national origin, religion or some other protected right." *Gray v. Bansley/Anthony/Burdo LLC*, No. 3:19-CV-1869 (KAD), 2020 WL 292230, at *4 (D. Conn. Jan. 21, 2020).

Alternatively, a plaintiff can bring a "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Second Circuit has "held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Thus, to prevail on an equal protection class of one claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)).

Here, Plaintiff alleges that he "has been unfairly singled out for mistreatment" and that Defendants have "made the plaintiff feel 'less than and not worthy' of his constitutional rights," ECF No. 1 ¶ 50, but he fails to allege any facts in support of these conclusory statements that would raise plausible equal protection or class of one claims. Nor does he allege how he was treated differently than others similarly situated. Accordingly, Plaintiff fails to state a claim under the Equal Protection Clause.

C. Injunctive Relief

Additionally, to the extent that the Complaint asserts injunctive relief claims against Defendants in their individual capacities, *see* ECF No. 1 at 15, Defendants "would not have the authority to provide such relief in their individual capacities." *Kuck v. Danaher*, 822 F. Supp. 2d

109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, 3:18-CV-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). Accordingly, Plaintiff may not pursue injunctive relief claims against Defendants in their individual capacities.

In order to proceed with a claim for injunctive relief against Defendants in their official capacities, Plaintiff must allege an ongoing constitutional violation. *VA. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011). As the Court has concluded that Plaintiff states no plausible claim for relief in his complaint, there can be no ongoing constitutional violation as to which injunctive relief is directed. Accordingly, Plaintiff's request for injunctive relief must be denied.

## IV. CONCLUSION

For the reasons described herein, the Court concludes that the complaint does not state any plausible claims for relief and is dismissed.

Plaintiff may file an amended complaint with respect to his deliberate indifference claim; his Fourteenth Amendment due process claim related to his revocation hearing only; and his Fourteenth Amendment equal protection claim, in an attempt to rectify the deficiencies identified in this order. The amended complaint is due November 30, 2026**.** The Court encourages Plaintiff to organize the facts alleged in the amended complaint in chronological order, for ease of interpretation. He is also warned that the amended complaint completely supersedes and replaces the original complaint, so he must allege all facts against all potential Defendants in the amended complaint.

If Plaintiff fails to file an amended complaint by **November 30, 2026**, the Court will close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of October, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE